MOORE v. BANK OF BRITISH COLUMBIA et aL

BANK OF BRITISH COLUMBIA et al. v. MOORE.

(Circuit Court of Appeals, Ninth Circuit. October 5, 1903.)

No. 921.

1. TRUST—AGREEMENT CREATING CONSTRUED—RIGHTS OF PARTIES DETERMINED.

Complainant was the holder of certain stock of a corporation as collateral security for notes of a lumber company. At the instance of such company, and for its benefit, she transferred the stock to defendant bank to carry out an agreement of the company to give defendant a majority of the stock for voting purposes for the term of five years, the company covenanting with complainant to pay any assessment against the stock. Defendant executed to complainant a receipt reciting that the stock was not delivered as security for any debt, but in compliance with the agreement of the company, and was to be held for voting purposes only, complainant to receive any dividends paid thereon. It further provided that the stock might be reissued in any other name at the option of defendant, which should return an equal number of shares at the end of five years; that complainant should pay any assessments on the stock, but if not so paid, and paid by defendant, it should recoup itself with interest out of subsequent dividends, holding the stock in the meantime as collateral security. Defendant caused the stock to be reissued in the name of an employé, as it also did other stock which it held in pledge from the lumber company. An assessment was subsequently made on the stock, which the lumber company paid on the amount of stock it had in pledge with money lent it by defendant and charged to its account. The assessment was not paid on any other stock, and it was all sold for the nonpayment and bought in by the corporation which issued it. Defendant did not notify complainant of the assessment, nor that her stock had been reissued, and she had no knowledge of such facts. Defendant, having bought the interest of the lumber company in the pledged stock at execution sale, caused a certificate to be issued for the exact number of shares received from complainant, which it tendered to her at the expiration of the five years, conditional on her paying it the amount of the assessments paid thereon, which she refused to do, and thereupon she brought suit to recover the stock. *Held*, that the agreement under which the stock was delivered created a trust which bound defendant as trustee to return the stock unconditionally at the stipulated time, unless after notice to complainant of the assessment, and her failure to pay the same, it exercised its option to pay it and to look to future dividends for repayment; that having caused the identity of her stock to be lost and failed to notify her of any assessment thereon, or to pay the same itself it could not charge her with the amount of assessments which had been paid on the substituted stock by her pledgor.

Appeal from the Circuit Court of the United States for the Northern District of California.

For opinion below, see 106 Fed. 574.

This suit was originally brought in the superior court of the city and county of San Francisco by Frances J. P. Moore against the Bank of British Columbia, a corporation, the Moore & Smith Lumber Company, a corporation, the Sanger Lumber Company, a corporation, and Walter Young, and was thereafter removed to the Circuit Court of the United States for the Northern District of California, where, after the death of Frances J. P. Moore, a bill of revivor was filed by A. D. Moore, the duly appointed, qualified, and acting executor of her estate, in pursuance of which bill, and upon stipulation of the respective parties, the suit was revived and continued by A. D. Moore, executor of the will of Frances J. P. Moore, deceased, as complainant, against the defendants Bank of British Columbia and Walter Young, the

other defendants having been dismissed on motion of the complainant. The purpose of the suit was the recovery by the complainant from the defendant bank of 5,000¾ shares of the capital stock of the Sanger Lumber Company. A motion for the appointment of a receiver of the stock pending the litigation was made in and denied by the court below (106 Fed. 574), the court then being of the opinion that it did not appear that the complainant would probably prevail in the cause. After a trial upon the merits, however, the court below decreed that the defendant bank deliver to the complainant, A. D. Moore, as executor of the last will of Frances J. P. Moore, deceased, certificates for 5,000¾ shares of the stock of the Sanger Lumber Company, duly indorsed, upon the payment by the executor to the bank, within a stated time, of the sum of $70,231.01, with certain interest, aggregating about $98,000, and that, in case of the executor's failure to pay the whole of the principal sum and interest, all right, title, and interest of the said Frances J. P. Moore and of the said A. D. Moore, the executor of her last will, and of her estate, in the said shares of stock, be foreclosed and extinguished, and that neither the said A. D. Moore, as such executor, nor any other representative of her estate, have any further right to demand any stock of the Sanger Lumber Company from the defendant bank, nor any claim or right or demand whatsoever against the bank growing out of the matters in dispute. Neither party was satisfied with this decree, and from it both the complainant and the defendants appealed to this court, the former claiming the right to the stock in question absolutely, and without any payment or condition, and the latter contending that the complainant is not entitled to any of the stock upon any terms or conditions, and certainly not without making the payment required by the decree.

The case shows that on the 18th day of September, 1894, the following written agreement was executed by and between the Moore & Smith Lumber Company, A. D. Moore, H. C. Smith, and the defendant Bank of British Columbia:

"Agreement made this 18th day of September, 1894, between Moore & Smith Lumber Company, hereinafter called the Company, and A. D. Moore and H. C. Smith, and the Bank of British Columbia, hereinafter called the Bank.

"Whereas, the Company is indebted to the Bank in the sum of one hundred thousand dollars, secured by a mortgage of the Port Discovery Mill, and certain lumber lands in the State of Washington (which mortgage also secures the other indebtedness of the Company hereinafter mentioned), and in the sum of seventy thousand dollars, secured by pledge to the Bank of three notes of the Kings River Lumber Company each for the sum of fifty six thousand two hundred and fifty dollars, and in the sum of fourteen hundred and ninety dollars, secured by pledge to the Bank of a certificate of stock of the Pacific Pine Lumber Company, and whereas the Kings River Lumber Company is indebted to the Bank in the sum of ten thousand dollars, and whereas it is proposed among certain creditors of the Kings River Lumber Company to form a new corporation to be called the Sanger Lumber Company and that such creditors of the Kings River Lumber Company shall assign their claim against the Kings River Lumber Company to the Sanger Lumber Company in exchange for the stock of the Sanger Lumber Company:

"Now, if said new corporation is formed and said arrangement goes into effect among the creditors of the Kings River Lumber Company, the Bank hereby agrees to take stock in the Sanger Lumber Company at its par value to the amount equal to said three notes of the Kings River Lumber Company, and said $10,000 debt of the Kings River Lumber Company, and said $1,490 debt of the Company, in all amounting to $180,240; and will assign all of said notes and debts to said Sanger Lumber Company in payment of its stock, such assignment to be without recourse against the Bank or any indorsers on said notes, including the Moore & Smith Lumber Company, and the assignment of the note evidencing the $1,490 debt to bear upon its face the stipulation that the Sanger Lumber Company shall look for its payment only to the said certificate securing it; and the interest on said three notes of the Kings River Lumber Company to be indorsed

thereon as paid up to the time of their delivery to the Sanger Lumber Company, and will deliver said certificate to the Sanger Lumber Company.

"The company will convey by a deed absolute to the Bank or its nominee the said Port Discovery Mill and said lands in Washington, and the Bank will cancel and deliver up to the Company said $100,000 note and said $70,000 note.

"The Bank shall then open an account with the Company in which the Company shall be debited with said sum of $100,000 and all taxes, insurance, and expenses connected with said mill and timber lands and the sum of eighty-one thousand four hundred and ninety-one dollars, being the actual cost to the Bank of the stock of the Sanger Lumber Company, and with interest on such amounts at the rate of six per cent. per year from July 1st, 1894, and shall be credited with any dividends on said stock of the Sanger Lumber Company, and with the proceeds of any sales of said stock made under the permission hereinafter given, and with the proceeds of any sales of the said mill property or timber lands made under the per-mission hereinafter given, and with all sums paid to the credit of said ac-count by the Company, and with interest on all such credits at the rate of six per cent. per year, the interest so to be charged and credited to be adjusted and charged and credited at the end of each six months.

"The Bank shall hold said stock of the Sanger Lumber Company and said mill and timber lands as security for the amount due to it as shown by said account, and may any time sell said mill or any part of the whole said timber lands for any price it pleases, provided that if at any time it can sell said mill and lands for $100,000, it shall be bound to do so; and it may at any time sell not more than one-half of said stock of the Sanger Lumber Company for any price it pleases, giving the Company, however, the preference of purchasing at the price the Bank is willing to accept.

"At any time within five years from the date thereof, the Company may pay the Bank the balance of debt shown by said account, and on such payment the Bank shall cause to be conveyed to the Company all then remaining unsold of said mill and timber lands, and shall transfer and deliver to the Company all then remaining unsold of said stock of the Sanger Lumber Company.

"At the end of five years from the date hereof the balance of debt shown by said account shall be due and payable by the Company to the Bank, and if not paid, the Bank may foreclose its lien for the same against said mill and timber lands, and in any action of such foreclosure shall be allowed a counsel fee at the rate of five per cent. upon the amount found due, and may sell any or all of said stock of said Sanger Lumber Company then remaining unsold at either public or private sale with or without notice and without any previous demand upon or notice to the Company, and at any such sale may itself become a purchaser, and shall render any surplus of the proceeds of such sale to the Company.

"The said A. D. Moore and H. C. Smith, jointly and severally, hereby guarantee to the Bank the payment by the Company at the end of five years of the balance due on said account, waiving all demand on the Company and all notice to them of nonpayment, and any defense arising out of any delay on the part of the Bank in enforcing its debt or realizing on its security, or arising out of any extension or renewal of the debt by the Bank, or the taking by the Bank of any further security for the same, and waiving notice of any such extension or renewal, meaning to guarantee the debt until paid and whether renewed or not.

"The Company will deliver to the Bank and cause to be transferred to it or its nominees on the books of the corporation, sufficient stock of the Sanger Lumber Company to give the Bank, with the stock of the corporation which it is to take as security as aforesaid, a majority of the issued stock in its possession and control. This latter stock so to be delivered to the Bank is not to be held by it as security for said account, but only in trust for the purpose of giving the Bank the power to vote it. All its dividends shall be payable in cash to the Company as soon as declared and paid, and upon the payment by the Company of its debt as shown by said account, or upon the commencement of any action for the foreclosure of the Bank's lien on the Washington property and the realization of the Bank's

pledge of the Sanger Company's stock held by the Bank as security, it shall be returned by the Bank to the Company, and in no event shall it be retained by the Bank longer than five years from the date hereof. If at any time the right of the Bank to vote the Sanger Lumber Company's stock, either that held by it as security or that held by it in trust as aforesaid, shall be for any reason successfully resisted, then, at the option of the Bank, of which no notice need be given to the Company or said Moore or said Smith, the amount shown to be due by said account shall become immediately due and payable, and the Bank may foreclose its lien on the Washington property and all the stock of the Sanger Lumber Company held by it as security aforesaid.

"This agreement is conditioned by the formation of the Sanger Lumber Company and the going into effect of the aforesaid arrangement among certain creditors of the Kings River Lumber Company for the assignment of their claims against the Kings River Lumber Company to the Sanger Lumber Company.

"In witness whereof the Moore & Smith Lumber Company has caused these presents to be signed by its president and secretary, and its corporate seal to be affixed hereto, and the said A. D. Moore and H. C. Smith have subscribed their names hereto, and the said Bank of British Columbia has caused these presents to be signed by Walter Powell, its manager in San Francisco, all in due duplicate the day first above written.

"[Seal.]                              Moore & Smith Lumber Company.
                                        "By A. D. Moore, President.
                                        "By Chas. A. Moore, Secretary.
                              "A. D. Moore.
                              "H. C. Smith.
                              "Bank of British Columbia.
                                        "By W. Powell, Manager."

The Sanger Lumber Company was thereafter incorporated with a capital stock divided into 24,000 shares of the par value of $25 each, of which the Moore & Smith Lumber Company became the owner of 19,552¼ shares. 7,209½ of these shares the Moore & Smith Company pledged to the bank prior to December 19th, 1894, in pursuance of the provisions of the agreement of September 18, 1894. Between those dates, to wit, on the 17th of November, 1894, the Moore & Smith Lumber Company executed three promissory notes in favor of Frances J. P. Moore, who was the wife of A. D. Moore, the president of the company, each for the sum of $19,374.43, bearing interest at the rate of 6 per cent. per annum; and, as collateral security for the payment of the principal and interest of one of the notes, the company delivered to Mrs. Moore 1,875 shares of the capital stock of the Sanger Lumber Company, evidenced by two certificates numbered, respectively, 45 for 1,250 shares and 46 for 625 shares, both issued in the name of A. D. Moore, trustee for the Moore & Smith Lumber Company, and so indorsed by him. As collateral security for the payment of another of the notes, the company delivered to Mrs. Moore 1,875 shares of the stock of the Sanger Lumber Company, evidenced by two certificates, one numbered 44 for 1,250 shares, and the other numbered 47 for 625 shares, both of which were also issued in the name of A. D. Moore, trustee for Moore & Smith Lumber Company, and by him so indorsed; and as collateral security for the other of the notes, the company delivered to Mrs. Moore 1,875¾ shares of the stock of the Sanger Lumber Company, evidenced by two certificates, one numbered 43 for 1,250 shares, and the other numbered 48 for 625¾ shares, both issued in the name of A. D. Moore, trustee for the Moore & Smith Lumber Company, and by him so indorsed. Each of these notes and collaterals was accompanied by a written agreement on the part of the Moore & Smith Lumber Company, expressly declaring and providing, among other things, that "This Company will pay all assessments levied on above stock, and failing to do so, the payee may pay same and add amount with interest to above note, and in latter case the above note and interest become at once due and payable."

Subsequently, at the request of the Moore & Smith Lumber Company, and to enable it to carry out its agreement with the defendant bank made September 18, 1894, Mrs. Moore delivered to the bank at different

times, and in three installments, 5,000¾ shares of the 5,625¾ shares of the Sanger Lumber Company's stock held by her as collateral, the first of which installments was so delivered on the 19th day of December, 1894, upon and in consideration of which delivery the bank at the time executed to her this receipt and agreement:

"San Francisco, December 19th, 1894.

"Received from Frances J. P. Moore thirty-one hundred and twenty-five (3,125) shares of the capital stock of the Sanger Lumber Company issued under certificates number 45 for twelve hundred and fifty (1,250) shares, number 43 for twelve hundred and fifty (1,250) shares, and number 48 for six hundred and twenty five (625) shares, to A. D. Moore, trustee from (for) Moore & Smith Lumber Company, and so indorsed in blank, by him as such trustee, and held by her as collateral security for debts due to her by the Moore & Smith Lumber Company and delivered by her to this Bank, with consent of the Moore & Smith Lumber Company, and which stock may, at the option of this bank, be re-issued in such other name as this bank may elect, and said stock to remain in the hands of this bank for five (5) years, from September 18, 1894, and with the obligation of this bank at the end of said time to hand back to Frances J. P. Moore, her heirs or assigns, said stock, or an equal number of shares of said stock, and to·pay over to her, her heirs and assigns, all dividends declared and paid during said five (5) years on said stock, as same are declared and paid, it being understood that all assessments on said stock during said time shall be paid by said Frances J. P. Moore, and if not so paid and paid by this bank, then this bank to recoup itself, with interest at six per cent. per annum, out of subsequent dividends, holding the stock in the meantime as collateral security.

"It is understood that this stock is not delivered to this bank as collateral security for any debt, or claim due to it by said Frances J. P. Moore or any other person or company, but to enable the said Moore & Smith Lumber Company to carry out its agreement with this bank of September 18th, 1894, to give to this bank a majority of the stock of said the Sanger Lumber Company, for the purpose of voting.

"[Seal]                "For the Bank of British Columbia, San Francisco.
                                "W. Powell, Manager.
"With our consent:    Moore & Smith Lumber Company.
                                "By A. D. Moore, President.
                                "By Chas. A. Moore, Secretary."

A similar receipt and agreement was executed by the bank to Mrs. Moore upon the delivery to it of the other installments of stock mentioned.

Before consummating this arrangement, certificate No. 44, for 1,250 shares, was canceled, and, in its stead, two certificates were issued in the name of A. D. Moore, trustee for the Moore & Smith Lumber Company, numbered, respectively, 91 for 450 shares, and 92 for 800 shares, the certificates received by the bank from Mrs. Moore being as follows:

| Number. | | Shares. |
|---|---|---|
| 43 | for | 1250 |
| 45 | for | 1250 |
| 46 | for | 625 |
| 48 | for | 625¾ |
| 91 | for | 450 |
| 92 | for | 800 |
| | | 5000¾ |

These certificates, so delivered to the bank, were thereafter, at its request, canceled and replaced by certificates in the name of the defendant Walter Young, trustee, as follows:

| Number. | | Shares. |
|---|---|---|
| 72 | for | 3125¾ |
| 94 | for | 800 |
| 109 | for | 1075 |
| | | 5000¾ |

At the time of the respective deliveries of the stock by Mrs. Moore to the bank, aggregating 5,000¾ shares, indorsements were respectively made by the Moore & Smith Lumber Company, through its president and secretary, on the notes of that company held by Mrs. Moore, of similar import, the first of which reads as follows:

"At the request and by the advice of this company, the payee of this note, Frances J. P. Moore, has this day placed in trust with the Bank of British Columbia, of this city, one (1) of the certificates of stock of the Sanger Lumber Company, to-wit, number 45, for twelve hundred and fifty (1250) shares, pledged for collateral to this note in order to help this company to carry out a certain agreement between it and said Bank, dated September 18th, 1894.

"Dec. 19, 1894.                               Moore & Smith Lumber Co.,
                                              "By A. D. Moore, President.

"By Chas. A. Moore, Secretary."

On the 9th day of January, 1896, the subscribed and issued stock of the Sanger Company was 23,849¼ shares. Of these the Moore & Smith Lumber Company owned 19,552¼ shares, 7,209½ of which were then pledged to the defendant bank as collateral security for money owed it by the Moore & Smith Lumber Company; 5,625¾ of which stood pledged to Mrs. Moore as collateral security for money due by the Moore & Smith Lumber Company to her, 5,000¾ of which 5,625¾ shares were then in the hands of her trustee, the defendant bank, for the purpose and under the agreement above set out; 6,495½ of which shares stood in the name of A. D. Moore, trustee; and 222 shares of which stood in the name of the Moore & Smith Lumber Company.

Of the 23,849¼ shares of the stock of the Sanger Lumber Company outstanding on the 9th day of January, 1896, the defendant bank thus held 12,210¼ shares, and, therefore, the controlling interest. On that day an assessment of $2.50 per share was levied by the Sanger Company. The assessment was paid on the 7,209½ shares held by the defendant bank as collateral security for moneys due it from the Moore & Smith Lumber Company, but was not paid either upon the 5,000¾ shares theretofore delivered to the bank by Mrs. Moore and by it placed in the name of one of its employés, the defendant Walter Young, as trustee, nor upon the 625 shares of the 5,625¾ shares pledged to Mrs. Moore by the Moore & Smith Lumber Company and retained by her. All of the stock that was pledged to Mrs. Moore, and all of the other stock of the Moore & Smith Company except the 7,209½ shares pledged to the bank, was thereafter sold for the assessment and bought in by the Sanger Lumber Company at the delinquent sale. A. D. Moore was president both of the Moore & Smith Company and of the Sanger Lumber Company, presided at the directors' meeting at which the assessment was levied, and voted for it. No notice was given by the defendant bank to Mrs. Moore of the levy of the assessment or the sale thereunder, nor was she informed that the stock delivered by her to the bank had been, at its request, put in the name of the defendant Walter Young, trustee. At the time of the assessment, and at the time of the sale of the stock, the Sanger Lumber Company was indebted to Mrs. Moore in the sum of about $40,000.

The five years provided for in Mrs. Moore's agreement with the defendant bank expired September 18, 1899. A year or more prior to the expiration of that period, the Bank of California sued the Moore & Smith Lumber Company for a debt, levied upon the interest of the Moore & Smith Lumber Company in the 7,209½ shares of the stock of the Sanger Company held by the Bank of British Columbia in pledge, and, under an execution sale based upon a judgment recovered by the Bank of California in that action, purchased the interest of the Moore & Smith Lumber Company in and to those shares of stock, and thereafter assigned all of its interest therein to the defendant Walter Young in consideration of $100. Subsequently Young, still acting for the defendant bank, caused the certificate for the 7,209½ shares which stood in his name, as trustee, to be canceled, and in its stead two certificates to be issued in his name, one of which, numbered 142, was for 5,000¾ shares. The evidence shows that this proceeding was taken at the request and in the interest of the defendant Bank of British Columbia, and that one of its purposes was to have sufficient of the Sanger Company's stock available for delivery to Mrs. Moore at the expiration of the five-year term provided for in

the agreement between her and the bank. When that time expired she demanded of the bank the return of the 5,000¾ shares delivered to it by her. In response to that demand, the bank replied in writing, as follows:

"Mrs. Frances J. P. Moore—Dear Madam: Whereas, on December 19th, 1894, the Bank of British Columbia received from you thirty-one hundred and twenty-five and three-quarters shares of capital stock of the Sanger Lumber Company, issued under certificates number 45, 43, and 48; and whereas on February 14th, 1895, said bank received from you eight hundred shares of said stock, being certificate number 92; and whereas on June 28th, 1895, said bank received from you ten hundred and seventy five shares of said stock, being certificate number 46; and whereas all of said stock was received by said bank from you with the obligation of said bank at the end of five years from September 18th, 1894, to hand back to you said stock, or an equal number of shares of said stock

"Now, therefore, the said Bank of British Columbia hereby and herewith tenders to you and offers to deliver to you certificate number 142 for five thousand and three-quarters shares of the Sanger Lumber Company, in the name of Walter Young and duly endorsed by him.

"As a prerequisite to and condition of the delivery of said five thousand and three-quarters shares to you under this offer and tender, the said Bank hereby demands that you pay to it the sum of ninety-eight thousand seven hundred and fifty dollars, being the amount of the assessments upon the said stock which have been levied and paid since the delivery of said shares by you as aforesaid to said Bank.

"Upon the payment by you of said sum of said five thousand and three-quarters shares of stock will be delivered to you.

"September 19th, 1899.

"For the Bank of British Columbia, San Francisco.
"W. Powell, Manager."

Mrs. Moore, having declined to pay the bank the $98,750 demanded of her as a condition to the delivery of the stock, or any other sum of money, brought the present suit. Before doing so, however, and after the receipt of the bank's reply of September 19, 1899, she canceled the indebtedness of the Moore & Smith Lumber Company to her in consideration of the assignment by that company to her of all of its interest in the 5,625¾ shares of the Sanger Company's stock theretofore pledged to her. Since the submission of the case, A. D. Moore died, and on the 20th of May, 1903, an order was entered substituting Percy P. Moore, administrator with the will annexed of the estate of Frances J. P. Moore, in the place and stead of A. D. Moore, executor.

Garber, Cresswell & Garber and Smith & Pringle, for appellant.

Bishop, Wheeler & Hoefler and Pringle & Pringle, for appellees.

Chas. S. Wheeler, for executor.

Sydney V. Smith, for Bank of British Columbia.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

We regard the case as a plain one. The delivery by Mrs. Moore of 5,000¾ shares of the Sanger Company's stock, held by her as collateral security for the indebtedness of the Moore & Smith Company to her, was made to the defendant bank at the request of the Moore & Smith Company, and in fulfillment of one of the covenants contained in the agreement between it and the bank of September 18, 1894; and they were so delivered to the defendant bank, not as an ordinary bailment, but in trust. It is so declared in express terms, not

only in the receipt and agreement executed by the bank to Mrs. Moore at the time of the delivery to it of the stock, but also in the contract of September 18, 1894. One of the conditions of the trust agreement was that whatever dividends might be paid during the period of five years therein mentioned on the stock so delivered should be paid over by the bank to Mrs. Moore, her heirs or assigns, it being therein expressly declared that the stock was not delivered to the bank as collateral security for any debt or claim due to it by Mrs. Moore, or any other person or company, but only to enable the Moore & Smith Company to carry out its agreement with the bank of September 18, 1894, to give to it a majority of the stock of the Sanger Lumber Company "for the purpose of voting"; in other words, to give the bank the control of that corporation. By the agreement of the parties it was further stipulated, in express terms, that the bank should not be required to return to Mrs. Moore the identical shares of stock so delivered to it by her, but might, at its option, cause those certificates to be canceled and other certificates of stock to be issued in lieu thereof in such other name as it might choose, and at the expiration of the five years return to her an equal number of shares of the stock of the Sanger Company.

The stock pledged to Mrs. Moore by the Moore & Smith Lumber Company was accompanied by an express agreement on the part of that company to pay all assessments levied thereon, with a provision to the effect that, if not paid by the company, Mrs. Moore should have the right to pay the same, and add the amount thereof, with interest, to the notes for which it was held as security, and the further right, in that event, to treat the notes and interest as immediately due and payable.

As between Mrs. Moore and the defendant bank, the agreement was that she should pay all assessments levied on the stock delivered by her to the bank during the five-year period, with a provision that "if not so paid, and paid by this bank, then this bank to recoup itself, with interest at six (6) per cent. per annum, out of subsequent dividends, holding the stock in the meantime as collateral security." It will be observed that under this provision no money paid by the bank as assessments upon the stock delivered to it by Mrs. Moore could be recovered by it from her, but only out of subsequent dividends upon the stock; until the payment of which, however, the bank should have the right to hold the stock as collateral security for assessments so paid by it. Perhaps this provision may have had something to do with the failure of the bank to avail itself of the privilege of paying the assessment upon the 5,000¾ shares of stock delivered to it by Mrs. Moore; for, however promising the outlook may have been at the time of entering into the agreements in question, it is quite evident from the record that "dividends" on the stock of the Sanger Lumber Company, during the period for which the stock in controversy was placed with the defendant bank, were impossible. It is not claimed that the bank ever notified Mrs. Moore that it had caused the stock delivered to it by her to be reissued in the name of one of its employés, the defendant Young, as trustee, nor that the bank ever notified her of the assessment levied by the Sanger Lumber

Company, or of the fact that the assessment upon the 5,000¾ shares of stock then standing in Young's name was not paid.

Considering the 5,000¾ shares delivered by Mrs. Moore to the bank as being represented only by the certificate afterwards issued at the bank's request in the name of Young, trustee, we think the bank is, in equity, bound to return to the complainant an equal number of shares, unconditionally, unless it has paid some assessment or other charge thereon. The testimony of Mrs. Moore is distinct and positive that she did not know of the assessment, and that she was financially able to have paid it. It is earnestly insisted on the part of the bank that, in view of the relationship existing between her and A. D. Moore (in whose interest and for whose benefit she manifestly delivered the stock to the defendant bank), it is incredible that the husband did not inform the wife of the assessment. We do not think so. The assessment under which the 5,000¾ shares standing in the name of Young, trustee, were sold, was levied January 9, 1896. The undisputed evidence is that A. D. Moore made strenuous efforts to induce the defendant bank to loan the Moore & Smith Lumber Company sufficient money with which to pay the assessment upon all the Sanger Lumber Company's stock owned by it. It further shows that he was in London—the home office of the defendant bank—endeavoring to accomplish that result at the time of the delinquent sale. While striving and hoping to bring about that end, and thus to comply, among other things, with the obligation of his company to his wife to pay the assessment upon the stock it had pledged to her, we do not think it incredible that he failed to inform her of the assessment, or of the inability of the Moore & Smith Company to pay it as it had agreed to do. Husbands do not always tell their wives of their troubles and shortcomings. As a matter of course, in this instance A. D. Moore should have done so; but the testimony of Mrs. Moore is positive that he did not, and we see nothing in the circumstances of the case to justify the rejection of her testimony as being untrue.

As the defendant bank held the stock in question in trust for Mrs. Moore, for its own purposes, with the right to place it in the name of another of its own selection, and with the privilege of paying—in the event its cestui que trust did not do so—all assessments thereon during the trust period, recouping the amount thereof, with interest, out of the contemplated dividends, and as the bank, in the exercise of the right conferred upon it, did cause the stock of its cestui que trust to be placed in the name of one of its own employés, thereby giving it the control of the corporation, it was, upon the most obvious principles of fair dealing, bound to give its cestui que trust notice, not only of the assessment, but also of the fact that the stock which had been turned over to it in trust then stood in the name of its employé Young. Otherwise how, in any event, would its cestui que trust know upon what stock to pay? We know of no principle of equity under which a trustee of stock so placed and held, and with the stipulated right in itself to pay the assessments thereon and recoup the amount thereof with interest, can permit the same to be sold for delinquency and bought in by the corporation, other stock of which it holds, without notice to its cestui que trust either of the fact of the assessment

or of the person in whose name it has caused the trust stock to be placed. But we are of the opinion that it does not appear that any of the trust stock was ever sold for any assessment. As has been seen, under the trust agreement the bank was not required to hold or to return the specific shares it received from Mrs. Moore, but was expressly authorized to convert them into other shares, and was only required to return, upon the expiration of the five-year period, an equal number of shares of the stock. The record shows that the bank commenced to exercise the rights thus conferred almost immediately upon entering upon its trust, and wiped out the identity of the shares it received from Mrs. Moore by causing the certificate therefor to be canceled, and the stock to be issued in the name of its employé Young. But the bank all the time retained in its possession an equal number of shares, and more. It held continuously the 7,209½ shares it received from the Moore & Smith Lumber Company as collateral security, and more than a year before the expiration of the trust period undertook to acquire all of the interest of the Moore & Smith Company therein, and thereafter caused the certificate for those shares to be broken up and one of the certificates issued in lieu thereof to be issued in the name of the defendant Young for 5,000¾ shares. All of this was done, according to the testimony of the officers of the bank, for the distinct purpose of being ready to return to Mrs. Moore an equal number of shares of the same stock it had received from her, when the proper time should arrive. And these 5,000¾ shares it did actually tender her in writing, upon the expiration of the five-year period, in response to her demand for her stock. Having thus treated 5,000¾ of the shares pledged to it by the Moore & Smith Lumber Company as "the equal number of shares" it had bound itself to return to its trustor, the bank cannot now be allowed to change the position it has all along assumed, and to successfully contend that, in fact, its trustor's stock was sold while standing in the name of one of its own employés, in which it had caused it to be placed without notice to its trustor, and without notice to her that any assessment thereon had been levied. Equity does not so regard the rights and obligations of trustee and trustor.

While the defendant bank failed to exercise the right, reserved to it by its agreement with Mrs. Moore, of paying the assessment on the stock delivered to it by her, and recouping the amount with interest out of subsequent dividends thereon, it did advance the money for the payment of the assessment upon the 7,209½ shares that were held by it as collateral security for the indebtedness of the Moore & Smith Lumber Company. The assessments upon that stock were paid; but they were paid by the Moore & Smith Lumber Company, to which the bank loaned the money for that purpose, and to which company the bank charged the money so advanced upon its books, with interest. This fact is distinctly testified to by two of the principal officers of the bank, and is further shown by the record of a suit brought by the bank to recover of the Moore & Smith Lumber Company, and from A. D. Moore and H. C. Smith individually, a large sum of money, including the moneys loaned by it to that company with which to pay the assessments upon the 7,209½ shares of

stock of the Sanger Company. And those loans, it must be noted, were made in pursuance of the agreement between the defendant bank and the Moore & Smith Company, of date September 18, 1894, hereinbefore set out, wherein, in consideration of certain securities given it by that company and certain agreements on its part, the bank agreed to

"Open an account with the company in which the company shall be debited with said sum of $100,000, and all taxes, insurance, and expenses connected with said mill and timber lands, and the sum of eighty one thousand four hundred and ninety one dollars, being the actual cost to the bank of the stock of the Sanger Lumber Company, and with interest on such amounts at the rate of six per cent. per year from July 1st, 1894, and shall be credited with any dividends on said stock of the Sanger Lumber Company, and with the proceeds of any sales. of said stock made under the permission hereinafter given, and with the proceeds of any sales of the said mill property or timber lands made under the permission hereinafter given, and with all sums paid to the credit of said account by the company, and with interest on all such credits at the rate of six per cent. per year, the interest so to be charged and credited to be adjusted and charged and credited at the end of each six months."

That agreement further provided that:

"The bank shall hold said stock of the Sanger Lumber Company and said mill and timber lands as security for the amount due to it as shown by said account, and may any time sell said mill or any part of the whole [of] said timber lands for any price it pleases, provided that if at any time it can sell said mill and lands for $100,000, it shall be bound to do so; and it may at any time sell not more than one-half of said stock of the Sanger Lumber Company for any price it pleases, giving the company, however, the preference of purchasing at the price the bank is willing to accept. At any time within five years from the date thereof, the company may pay the bank the balance of debt shown by said account, and on such payment the bank shall cause to be conveyed to the company all then remaining unsold of said mill and timber lands, and shall transfer and deliver to the company all then remaining unsold of said stock of the Sanger Lumber Company. At the end of five years from the date hereof, the balance of debt shown by said account shall be due and payable by the company to the bank, and if not paid, the bank may foreclose its lien for the same against said mill and timber lands," etc., etc.

It thus appears by the written agreement of September 18, 1894, not only that the bank contemplated making advances upon the credit of the Moore & Smith Lumber Company, but that such sums of money as it should be willing to loan that company during the continuance of that agreement should not become due and payable until the expiration of five years from the date of the agreement, unless "the right of the bank to vote the Sanger Lumber Company's stock, either that held by it as security, or that held by it in trust as aforesaid, shall be for any reason successfully resisted," in which event "at the option of the bank, of which no notice shall be given to the company, or said Moore, or said Smith, the amount shown to be due by said account" should become immediately due and payable, and the bank have the right to foreclose its liens on the Washington property, and also on the stock of the Sanger Lumber Company held by it as security. The bank may have made a bad bargain, but, if so, it constitutes no just ground for contending that money it loaned to the Moore & Smith Lumber Company at inter-

est, for the purpose of paying assessments upon the Sanger Lumber Company's stock, should be treated as a payment by itself of those assessments. The bank never having paid any assessment upon the stock in question, so far as appears, the payment demanded by it as a condition to a return of the 5,000¾ shares was wholly without right.

It results that the judgment must be so modified as to decree that the defendant bank deliver to the complainant certificates for 5,000¾ shares of the stock of the Sanger Lumber Company, properly indorsed, unconditionally and without the payment of any money or other thing, and costs of suit; and, as so modified, it will stand affirmed.